## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL CASE NO. 14-231 (JEB)** |
| | : | |
| **KEYON ANTHONY MANNING,** | : | |
| **also known as "Lamar Marcus Wiliams,"** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in support of its request and recommendation that the Court accept and approve the written plea agreement pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(C) for the two counts in the Superseding Information, one count of Possession with Intent to Distribute 100 Grams or More of a Mixture and Substance Containing a Detectable Amount of Phencyclidine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iv), and one count of Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c), and sentence the defendant to a period of incarceration of 240 months, to be followed by a period of supervised release for 5 years.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2017, a Superseding Information was filed charging the defendant with one count of Possession with Intent to Distribute 100 Grams or More of a Mixture and Substance Containing a Detectable Amount of Phencyclidine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iv), and one count of Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c).  On October 17, 2017, the defendant pled guilty pursuant

to a written plea agreement to the Superseding Information.  The government agreed to dismiss the Indictment at the sentencing hearing.  Should the Court approve the Rule 11(c)(1)(C) plea agreement, the Court will agree to sentence the defendant within the sentencing range of 204 months to 240 months to be followed by a period of supervised release of five years.  Pursuant to the Rule 11(c)(1)(C) plea agreement, the parties retain their right to allocute for any sentence within the sentencing range of 204 months to 240 months.

The offense conduct, as set forth in the proffer of evidence, is as follows.  On March 26, 2014, at approximately 5:30 p.m., officers of the Metropolitan Police Department (hereinafter "MPD") and special agents with the Bureau of Alcohol, Tobacco and Firearms and Explosives (hereinafter "ATF") executed a court authorized search warrant at 4442 E Street, Southeast, Apartment 1, Washington, D.C.  The defendant was not the leaseholder of that address but possessed keys to that apartment.  The defendant stored and processed narcotics in that apartment that he distributed to others.  He also stored firearms in that apartment that he possessed and used in furtherance of his distribution of illegal narcotics.

At the time the search warrant was executed, the defendant was the only adult inside 4442 E Street, Southeast, Apartment 1, Washington, D.C.  When the police entered the apartment, the defendant was found inside of the sole bedroom.  During a search of that apartment, members of law enforcement recovered the following illegal narcotics that the defendant possessed with the intent to distribute:  (1) 367.5 grams of Phencyclidine; (2) 23.16 grams of parsley soaked Phencyclidine; (3) 91.22 grams of Cocaine Base; (4) 161 grams of Cocaine Hydrochloride; (5) 7 grams of Heroin; and (6) 489.1 grams of Marijuana.[1]

---

[1]      The listed narcotic quantities are net weights from the Drug Enforcement Administration Laboratory Reports.

Additionally, law enforcement recovered from 4442 E Street, Southeast, Apartment 1, Washington, D.C, a black Ruger P-95 .9 mm semi-automatic pistol, serial number 31560069, loaded with one cartridge in the chamber and 11 cartridges in the magazine, and a black Daewoo DH40 MK11 .40 caliber semi-automatic pistol, serial number DA001596, loaded with one cartridge in the chamber and 8 cartridges in the magazine, that the defendant possessed during and in furtherance of his possession with intent to distribute the above-listed illegal narcotics recovered from that same apartment.  Law enforcement also recovered from that apartment $3,959.00 in United States currency that belonged to the defendant that he intended to use to facilitate his possession with intent to distribute the Phencyclidine.  The following items were recovered from the search of that apartment that the defendant possessed to facilitate his illegal narcotics distribution:  (1) gloves; (2) a mask; (3) numerous multi-colored ziploc bags; (4) aluminum foil; (5) a funnel; (5) scales; (7) eye droppers; (8) several cans of starter fluid; (9) large jar with a plastic measuring spoon; (10) a sandwich bag containing plastic syringes; and (11) a Bianchi gun holster.

On August 12, 2014, officers of the MPD, special agents of ATF, and special agents of the Drug Enforcement Administration executed a court-authorized search warrant at 3516 Ely Place, SE, #2, Washington, D.C.  The defendant was not the leaseholder of that address but stored and processed narcotics in that apartment that he distributed to others.  As members of law enforcement entered that apartment, the defendant ran out the back of the apartment.  While running away, the defendant discarded from his person to the ground a Bodyguard black Smith and Wesson .380 caliber semi-automatic pistol, serial number KAH8621, that was loaded with 6 cartridges.  Law enforcement recovered from 3516 Ely Place, SE, #2, Washington, D.C., four vials that contained a total of 43 grams of Phencyclidine, additional empty vials, a ceramic cup with suspected cocaine base residue, parsley containers, a kitchen pot with residue, and aluminum foil.

That same day, August 12, 2014, law enforcement also executed a court-authorized search warrant on a Honda that they saw the defendant drive to 3516 Ely Place, SE, #2, Washington, D.C., but was registered to another person.  Law enforcement recovered from the Honda inside a hidden compartment in the dashboard area four vials that contained a total of 44 grams of Phencyclidine and paperwork in the defendant's name.  The defendant possessed with the intent to distribute the Phencyclidine recovered from the Honda.

The defendant possessed and carried the Smith and Wesson .380 caliber semi-automatic pistol during and in furtherance of his illegal narcotics activities, to protect his narcotics, and to assist, accomplish, advance and achieve his goals and objectives of possessing the Phencyclidine with the intent to distribute it to other individuals.

The defendant possessed with intent to distribute all of the illegal narcotics listed herein knowingly and intentionally, and not by mistake, accident, or inadvertence.

## II.    <u>CALCULATION OF SENTENCING GUIDELINES</u>

The government does not dispute the Sentencing Guideline calculations contained in the Pre-Sentence Report (hereinafter "PSR") at paragraphs 47 through 60, which is the defendant's career offender guidelines.  <u>See</u> PSR ¶ 57 and U.S.S.G. § 4B1.1(b)(2).[2]  The defendant has demonstrated acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a)(b).  Therefore, the government moves for the defendant to receive a decrease of three levels from the base offense level of 32.  The government also does not dispute the defendant's criminal convictions and scoring of those convictions, as set forth in paragraphs 62 through 68 of the PSR.  We agree that the defendant qualifies as a Career Offender.  With a criminal history category of VI and a total offense level of 31,

---

[2]      The plea agreement set forth the defendant's estimated career offender sentencing guidelines.  <u>See</u> Plea Agreement, ECF Doc. 41, at 4, ¶ 5B.  The plea agreement also set forth the estimated non-

the defendant's career offender sentencing guideline range as set forth in the PSR at paragraph 116 is 262 months to 327 months.

## III.    RECOMMENDATION

All of the applicable factors set forth in Title 18, United States Code, Section 3553(a), should be considered by this Court.  See United States v. Gall, 128 S.Ct. 586 (2007).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).   The government's sentencing recommendation is based upon a review of all of these factors.

Here, the defendant was involved with five different types of illegal narcotics with the intent to distribute them.  His total specific relevant conduct is 454.5 grams of Phencyclidine; 91.22 grams of Cocaine Base; 161 grams of Cocaine Hydrochloride; 7 grams of Heroin; and 489.1 grams of Marijuana.  Illegal drug use has devastating effects on individuals who use it.  Often, violence is associated with the distribution of illegal narcotics.   A reasonable inference can be made that the defendant's monetary greed was the basis for his involvement with the illegal narcotics.   He also possessed three different firearms.  These are very serious offenses and there is no place in our community for illegal narcotics and firearms.   Notably, the defendant also attempted to shield himself from law enforcement by using residences and a vehicle that belonged to other individuals.

career offender sentencing guidelines computation.  See id. at 4, ¶ 5C.

The use of property belonging to third parties is a common method used by illegal narcotics distributors to further shield their criminal exposure and to shield themselves from law enforcement. The defendant also employed those methods in this case.

The defendant's criminal history reveals that this is not the first time he has been involved with illegal narcotics and firearms. He has three prior felony convictions. On September 16, 2009, he was sentenced in the United States District Court for the District of Maryland, Greenbelt Division, to a concurrent period of incarceration of 71 months for Possession With Intent to Distribute Five Grams or More of Cocaine and Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by imprisonment for a Term Exceeding One year. At the time that the defendant committed the offenses in this case, he was on supervised release for that federal court conviction. That case stemmed from the execution of a search warrant on a residence in Maryland where the defendant stayed with his mother. Members of law enforcement recovered from the defendant's bedroom a fully loaded Taurus 9mm semi-automatic pistol, numerous ziplock baggies containing a total of 11 grams of cocaine base, and a Pyrex measuring cup and a razor blade with suspected cocaine base residue inside that cup and on the razor blade. From a safe that belonged to the defendant but was located in the defendant's mother's bedroom, law enforcement recovered a Springfield Armory Xtreme 9mm semi-automatic pistol; two magazines, one loaded with 13 cartridges and the second loaded with 15 cartridges; and 38 .9mm cartridges. Law enforcement recovered from the defendant's vehicle a digital scale, dinner plates and a razor blade with white powdery residue. The packaging and quantity of the cocaine base, coupled with the various items that were used for preparing illegal narcotics for distribution, was consistent with the defendant's intent to distribute the cocaine base. Moreover, it is common for individuals involved in the

distribution of illegal narcotics to possess firearms for protection.  At that time, the defendant possessed two 9mm semi-automatic pistols and ammunition.

On August 14, 2009, the defendant was convicted of Transport, Wear and Carry a Firearm in the Circuit Court for Prince George's County, Maryland.  He received a sentence of three years, all suspended but for 329 days, for which he received credit for 329 days.  Thus, the defendant effectively received a suspended sentence.  During a traffic stop on a vehicle, the defendant was in the front passenger seat.   The police officer noticed the odor of marijuana coming from the passenger side of the car.  After the defendant was asked to get out of the car, he did, pushed the police officer and fled.  The police officer stopped the defendant and they both went down on tthe ground.  While on the ground, the police officer heard the sound of a metal object hit the ground.  The police officer recovered from the defendant's lower pant leg a Stallard M handgun that was loaded with ammunition.

On September 2, 2003, the defendant was convicted in the Circuit Court for Prince George's County, Maryland, of Possession with Intent to Distribute Cocaine and Possession of a Firearm with a Nexus to Drug Trafficking.  He received a sentence for both counts to a period of incarceration of five years to run concurrently.   The defendant possessed with the intent to distribute five grams of cocaine base, a Tanfoglio .45 caliber semi-automatic pistol, 7 .45 caliber cartridges, 20 .357 caliber cartridges, and 45 .380 caliber cartridges.

These convictions represent the defendant's possession of four different firearms, four different types of cartridges, and cocaine base intended for distribution.  When the firearms and illegal narcotics from the instant case are considered, the defendant has possessed with the intent to distribute five different illegal narcotics, specifically Phencyclidine, cocaine base, cocaine hydrochloride, heroin and marijuana.  He also has possessed numerous items routinely used to

prepare illegal narcotics for distribution, including Pyrex bowls and cups, scales, multiple zip bags in various colors, a funnel, eyedroppers, cutting agents, measuring spoons and gloves.   Law enforcement also has recovered seven firearms that the defendant possessed.   The defendant has had a dangerous and repeated history of involvement with firearms and drugs, and presents a danger to our community.   Over the years, his level of involvement with illegal narcotics has increased. Moreover, the nature of his illegal activities has remained eerily similar but one could argue that he has learned over the years and become more saavy.   On three separate occasions, including the facts in this case, as a convicted felon the defendant was a prohibited person and could not possess any firearm.   The distribution of illegal narcotics harms members of the community.   It also can be accompanied by violence.   Nothing good can come of possessing illegal firearms and illegal drugs. Indeed, that can be a very dangerous and sometimes deadly combination.

The defendant's compliance history while on supervised release also demonstrates that he has been willing to scheme and will be less likely to follow rules.   On June 3, 2013, while on supervised release, he attempted to bribe a technician for him to fraudulently submit the technician's urine as the defendant's urine sample.   The defendant initially offered to pay the technician $100 and increased the amount to $200 when the technician declined the first offer.   The technician did not accept the bribe and reported the incident to a supervisor.   Additionally, the defendant has failed to report for drug testing and has tested positive for illegal drug use while on supervised release.   For this case, the defendant failed to comply with the rules of the Heightened Intensity Supervision Program. Without authorization, he took off his GPS monitor and became a loss of contact.   An arrest warrant was issued on August 15, 2014, and the defendant was a fugitive until he was arrested on November 30, 2016.

The defendant has been involved in the criminal justice system for years.  It is apparent that nothing can seem to deter him from being involved in illegal activity.  While he has obtained his GED, his employment history has been sporadic and arguably short.   He worked six months on a part-time basis for a construction company owned by a friend.   He worked four months at Georgetown University Hospital and was terminated for being late.  He worked sporadically with his uncle's landscaping company.   For his longest employment period, he was self-employed for three years as a "runner" for individuals seeking permits with the District of Columbia Department of Consumer and Regulatory Affairs.   Moreover, he does not have any specialized skills training.  While he has spent a considerable amount of time incarcerated, those prior periods of incarceration have failed to deter the defendant.  Having a family and family members who love him have not deterred the defendant.  He also has used five different types of drugs at various times in his life, namely marijuana, cocaine hydrochloride, ecstasy, phencyclidine, and cocaine base.   He has experimented with heroin and drank alcohol.

Based on the defendant's life history, it is extremely hard to conclude that he wants to become a productive member of our community.  He has not taken advantage of and learned from prior periods of supervised release.  He has been afforded several opportunities to better himself and change his lifestyle with the assistance of the resources of a probation office but has failed to do so.  Rather, he resorts to what is familiar to him – being involved in illegal activities with distribution quantities of illegal narcotics and multiple firearms.  Indeed, when one considers the defendant's life history, it is quite overwhelming because it shows a disturbing pattern.

Only a lengthy sentence of imprisonment is adequate to reflect the seriousness of the offenses and to address the defendant's repeated involvement in distribution quantities of illegal narcotics and illegal firearms possession.  While the recommended sentence is lower than the advisory career

offender guideline sentence of 262 months to 327 months, for the reasons set forth herein, it is consistent with the statutory sentencing factors.  The government has considered what would be an appropriate sentence for the defendant, balancing the seriousness of the offenses, the need for just punishment, the threat the defendant poses to the community, and affording adequate deterrence to criminal conduct.  Based upon a consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), a sentence to a period of incarceration of 240 months, to be followed by a period of supervised release for five years, is an appropriate sentence.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472-845

BY:        _____/s/_____

Karla-Dee Clark
Assistant United States Attorney
D.C. Bar No. 435-782
555 4th Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 252-7740
Karla-dee.clark@usdoj.gov